JERRY DERRICO, Plaintiff-Appellant, *v*. CLARK EQUIPMENT COMPANY, Defendant-Appellee and Third-Party Plaintiff-Appellant.—(HENRY STEWART, d/b/a Stewart Building Maintenance, *et al.*, Third-Party Defendants-Appellees.)

First District (3rd Division)    No. 78-2060

Opinion filed November 26, 1980.

John A. Doyle, Ltd., and William J. Harte, both of Chicago, for appellant.

Cornelius P. Callahan and Hugh C. Griffin, both of Lord, Bissell & Brook, of Chicago, for appellees.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Jerry Derrico, brought this action for damages pursuant to the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) and for common law negligence for injuries he sustained while working at the showroom of the defendant, Clark Equipment Company (Clark). At the close of the plaintiff's case the trial court directed a verdict as to the Structural Work Act count in favor of Clark. The jury returned a verdict in favor of Clark as to the negligence count and found by answer to a special interrogatory that the plaintiff was guilty of contributory negligence. Judgment was entered on the verdict and the plaintiff appeals. Clark also conditionally appeals from the summary judgment entered against it and in favor of the third-party defendants on Clark's third-party complaint for indemnity.

The accident occurred on June 23, 1973, while the plaintiff was washing the windows of a showroom owned by Clark. Henry Stewart, d/b/a Stewart Building Maintenance (Stewart), had a contract with Clark to perform janitorial services. Stewart subcontracted the window washing portion of the contract to the plaintiff, who owned and operated a window-cleaning service. The plaintiff had washed the windows at Clark for approximately seven years.

When the showroom first opened, approximately seven years prior to the accident, a manager of Clark told the plaintiff not to clean the windows by standing on the floor and using a pole. Therefore, it was necessary to use a ladder in order to wash the windows. Upon completion of the work someone at Clark would sign the plaintiff's job ticket which stated that the work was performed satisfactorily. In most instances, however, no inspection was made of the work. The plaintiff then submitted the job ticket to Stewart for payment.

On the day of the accident the plaintiff and his summer helper, Jeffery DeLeon, entered Clark's showroom. The plaintiff testified that he asked an employee of Clark to move three forklifts which were parked parallel to the windows.

The plaintiff and DeLeon followed a regular routine while washing the windows. The plaintiff placed his ladder against the ledge which divided the upper and lower panes of glass on the first window. He gave the ladder, which had rubber shoes, a push or two to firm it. The plaintiff would dip his sponge into his bucket, wring out the sponge, climb up the ladder, wipe the upper pane, squeegee it and descend the ladder. The plaintiff would then move the ladder to the second window and DeLeon would wash the bottom pane of the first window. The plaintiff would then squeegee the pane that DeLeon had just washed. The plaintiff would repeat this procedure for the top pane of the next window and DeLeon would wipe off the water on the bottom ledge of the first window. DeLeon testified that if any water fell to the floor it never extended more than two inches from the window.

After washing approximately 10 windows, the plaintiff was descending the ladder when it started to slide. The ladder fell from the dividing ledge and hit the lower window pane. In order to prevent the ladder and himself from falling through the window, the plaintiff jerked back the ladder which slipped out from under him. He fell from the ladder and landed on the right side of his hip.

After his fall the plaintiff noticed a foreign substance on the floor. DeLeon testified that he observed that the legs of the ladder were partially in a 6-inch by 2-foot clear puddle on the floor. DeLeon stated that the substance felt like motor oil. He stated that the puddle was directly underneath the area previously occupied by the forklifts. The plaintiff testified that on two prior occasions he had observed oil on the showroom floor.

The plaintiff was taken by ambulance to a hospital. His son, Thomas Derrico, went to Clark's premises to pick up his father's equipment and automobile. Thomas testified that he noticed that there was some oil on the rubber shoes of his father's ladder. He smelled the substance and

recognized it as hydraulic fluid. He was familiar with the smell of this fluid because he had operated an automobile body shop for 10 years.

The plaintiff and his doctors testified concerning the nature and extent of his injuries. This testimony will not be discussed because it is irrelevant to this appeal. The plaintiff also described a subsequent injury which occurred when he returned to work. This accident occurred when the plaintiff's leg gave out while he was standing on a ladder and washing the windows of a private residence with a pole.

Irving Hazard, a registered professional engineer, conducted tests on the plaintiff's ladder at the request of Clark. The tests were conducted on a floor under different conditions in order to determine when the floor was most slippery. The results of the test in the order of slipperiness were as follows: (1) floor with motor oil on it; (2) floor with hydraulic oil on it; (3) dry floor; (4) wet floor. Hazard explained that the reason the wet floor was most resistant to slipping was that there is better adhesion between the rubber shoes on a ladder and the floor when the surface is wet.

On cross-examination Hazard stated that a person placing a ladder in oil would feel it immediately because the ladder would begin to move when tested for its sturdiness.

The trial court refused to admit into evidence the plaintiff's photograph of the showroom because there were markings on the picture and because the jury could readily visualize the showroom's appearance.

At the conclusion of the plaintiff's case the trial court directed a verdict in favor of Clark as to the Structural Work Act count of the plaintiff's complaint. The court found that there was no evidence that Clark was in charge of the work performed by the plaintiff.

Howard Gleiter, Clark's general sales manager at the time of the plaintiff's accident, testified that the forklifts were not parked parallel to the windows but were parked at 45° angles. He stated that there was no request to move the machines and that he gave no instructions to the plaintiff concerning the manner in which he washed the windows. Gleiter also testified that there were several feet of water on the floor and that DeLeon was using a mop and bucket to clean the floor.

Gleiter claimed that there were no rubber shoes on the ladder but that there was a smooth rubber skid pad. On cross-examination the plaintiff's counsel attempted to impeach Gleiter with his deposition testimony. The following colloquy occurred:

"Q: And didn't you also contend that he (the plaintiff) said to you that he should have replaced the bottom skids quite a while back? He said some months ago he was tempted to replace them because they had worn smooth?

A: Yes."

A second Clark employee at the time of the accident, Nicholas Haviland, testified that the forklifts were parked at 45° angles and that their tips were four to five feet from the window. He also testified that after the accident he observed that the floor was wet.

Ted Barr, a professional window washer, testified that based on his experience, it is impossible to pull a ladder up while it is sliding down, and be able to bring it over so that the man on the ladder would fall on his back. He stated that when the ladder slips the only thing that the user can do is go down on the ladder or jump off it. Commenting on the plaintiff's second accident, Barr asserted that a window washer cannot control a pole correctly while standing on a ladder.

Henry Stewart testified that he spoke to the plaintiff in the hospital on the day of the accident. He stated that the plaintiff admitted that he fell from the ladder because he lost his balance.

The trial court excluded the rebuttal testimony of Robert Hubney, the president of a window washing company. In an offer of proof, Hubney testified that it is a customary and normal procedure in the industry to use an extension pole while standing on a ladder.

In rebuttal, the plaintiff denied having a conversation with Stewart in the hospital. The trial court refused to permit the plaintiff to relate the substance of subsequent conversations with Stewart.

The trial court also excluded the rebuttal testimony of the plaintiff's brother, Stanley Derrico. In an offer of proof Stanley testified that he called Stewart the day following the plaintiff's accident to inform him of the plaintiff's injuries. Stanley stated that Stewart acted surprised when he heard the news.

On appeal the plaintiff argues that:

(1) The trial court improperly directed a verdict as to the Structural Work Act count.

(2) The jury's verdict and answer to a special interrogatory was against the manifest weight of the evidence.

(3) The jury was improperly instructed as to proximate cause.

(4) The trial court improperly limited rebuttal testimony.

(5) He was denied his right to impeach various witnesses.

(6) The trial court erred by refusing to admit into evidence the photograph of the showroom.

The plaintiff first argues that the trial court erred when it directed a verdict as to the count of the complaint which alleged a violation of the Structural Work Act (Act). A directed verdict should be entered only in those cases in which all the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The trial court held that no evidence was presented to establish that Clark was in charge of the work performed by the plaintiff. Mere proof of ownership of the premises at which an accident occurs is insufficient to establish liability under the Act. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) The Act provides that only a party in charge of the work can be liable thereunder. (Ill. Rev. Stat. 1973, ch. 48, par. 69; *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) Although the issue of whether one was in charge of the work is usually a question of fact for the jury, a trial court can grant a directed verdict on the issue when there is insufficient evidence to create a factual question. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403.

The determination of whether a party was in charge of the work is made by assessing the totality of the circumstances. (Norton.) "Having charge of" is a generic term which encompasses supervision and control, but it is not confined to these factors. *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247; *Ewert v. Wieboldt Stores, Inc.* (1980), 84 Ill. App. 3d 1008, 405 N.E.2d 1283.

In *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.*, the supreme court recently held that the evidence supported a finding that the owner was in charge of the erection of a building for purposes of the Act. The court noted that the owner's employee made daily inspections of the construction site and ordered work redone.

In *Ewert v. Wieboldt Stores, Inc.*, a window washer was seriously injured when he fell 15 to 20 feet while working. The plaintiff filed a complaint against the owner of the building alleging a violation of the Act. Following a trial at which the jury could not arrive at a verdict, the trial court entered judgment in favor of the owner. The appellate court reversed this finding and held that the record reflected a degree of ongoing participation in the window washing activity which could justify a factual finding that the owner was in charge of the work. The court noted that the owner had the right to stop and to inspect the work, to order the work redone, and to restrict the work to certain areas. The court also found it very significant that the owner furnished the allegedly defective scaffolding.

In the instant case Clark argues that the record reveals no participation in the window washing activity which would support a finding that it was in charge of the work. Clark argues that the plaintiff was hired and paid by Stewart, that Clark did not supervise or direct the window washing and that Clark did not furnish any equipment to the plaintiff.

The plaintiff maintains that it did present sufficient evidence to establish a factual question. The plaintiff first points out that someone at

Clark would sign the job ticket indicating its satisfaction with the plaintiff's work. However, the plaintiff admitted that usually no one from Clark inspected his work. We do not believe that the action of signing the job ticket, which was done for Stewart's benefit, can be considered evidence that Clark was in charge of the work.

The plaintiff also argues that at one time a manager of Clark told the plaintiff not to clean the windows by standing on the floor and using a pole. This instruction was given when the showroom first opened, approximately seven years prior to the accident. No testimony was presented concerning any subsequent instructions from anyone at Clark.

The plaintiff also argues that by permitting the presence of oil on the showroom floor, Clark allowed the plaintiff to place his ladder in an extremely dangerous position. While certainly relevant to the issue of negligence, this evidence has no relationship to the issue of whether Clark was in charge of the work.

■■ Viewing all of the evidence most favorably to the plaintiff, we believe that the evidence so overwhelmingly favors Clark that no contrary verdict could ever stand. (*Pedrick.*) Accordingly, the order of the Circuit Court of Cook County directing a verdict in favor of Clark as to the Structural Work Act count of the plaintiff's complaint is hereby affirmed.

The plaintiff also argues that the jury's verdict in the negligence action and its answer to the special interrogatory concerning the plaintiff's contributory negligence were against the manifest weight of the evidence. A reviewing court will not set aside a jury's verdict on the ground that it is contrary to the manifest weight of the evidence unless it is obvious that the jury arrived at the wrong conclusion. If there is evidence which supports the jury's verdict, this court should not interfere with the result. *Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 398 N.E.2d 382.

The parties presented conflicting evidence concerning the cause of the accident. The plaintiff maintained that oil on the floor from the forklifts caused the ladder to slide; Clark argued that the plaintiff's injuries resulted from his own negligence. The jury agreed with Clark's position, and we believe that there was evidence to support this conclusion.

Both Gleiter and Haviland testified that there was water on the floor after the accident. They also asserted that the forklifts were parked at an angle and not parallel to the windows, as the plaintiff claimed. Hazard, the registered professional engineer, testified that the plaintiff would have noticed the oil immediately when he tested the ladder to determine if it was firmly footed. Barr, the professional window washer, maintained

that the accident could not have occurred as the plaintiff had testified. Stewart claimed that the plaintiff admitted that he lost his balance and fell from the ladder.

■■ The foregoing evidence supports the jury's verdict and its answer to the special interrogatory. Thus, we cannot say that the jury's findings were contrary to the manifest weight of the evidence.

The plaintiff next contends that the jury was improperly instructed as to proximate cause. The plaintiff had requested that Illinois Pattern Instruction, Civil, No. 15.01 be given in its entirety. This instruction states:

"When I use the expression 'proximate cause', I mean [that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

The trial court refused to give the plaintiff's instruction and gave the instruction tendered by Clark, which did not contain the last two sentences included in the bracketed material. The court's decision was in accord with the notes following the instruction which state:

"When the only possible causes of the occurrence are the conduct of the plaintiff and defendant, the material in the brackets would be improper because it would prejudice the defendant's defense of contributory negligence."

■■ The plaintiff asserts that *Allen v. Pire* (1968), 102 Ill. App. 2d 421, 242 N.E.2d 450, holds that where there is no evidence of contributory negligence on the part of the plaintiff, the full instruction on proximate cause may be given if the plaintiff wishes. However, as we have previously discussed, there was evidence of contributory negligence. Therefore, the trial court properly deleted the bracketed material in the instruction.

The plaintiff argues further on appeal that on three occasions the trial court improperly limited rebuttal testimony. Rebuttal evidence is that which explains, repels, contradicts or disproves evidence introduced by the defendant during his case in chief. The allowance of rebuttal evidence lies within the discretion of the trial court, and the court's ruling will not be set aside absent an abuse of discretion. *Levenson v. Lake-To-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 394 N.E.2d 1359.

The first limitation of rebuttal involved the testimony of Gleiter. On cross-examination the plaintiff's counsel asked Gleiter whether he had stated in his deposition that the plaintiff commented after the accident that he should have replaced the pads on the bottom of the ladder. Gleiter responded affirmatively. Gleiter had not mentioned this conversation in

his direct examination, and the plaintiff's counsel apparently hoped to impeach him by demonstrating an inconsistency between his deposition testimony and his testimony at trial.

■■ The plaintiff now contends that the trial court improperly prohibited him from introducing evidence to rebut the existence of this conversation. We disagree. Evidence of prior statements of a witness inconsistent with his trial testimony is inadmissible as proof of the truth of the statement, but is admissible only to impeach the witness' credibility. (*People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.) Therefore, the testimony concerning the conversation was not substantive evidence requiring any rebuttal. Moreover, the plaintiff's counsel deliberately placed the conversation into the record for the first time during his cross-examination and cannot now complain of any prejudicial effects.

■■ The plaintiff's second instance of limited rebuttal concerns Stewart's statement that when he spoke to the plaintiff in the hospital on the day of the accident, the plaintiff admitted that he fell because he lost his balance. The plaintiff first contends that the trial court prohibited him from rebutting this testimony. However, the record reveals that the plaintiff denied having any conversation with Stewart while he was in the hospital. The content of the subsequent conversations between Stewart and the plaintiff was irrelevant.

In addition, the plaintiff argues that Stanley Derrico's testimony was admissible to impeach Stewart's statement. In an offer of proof Stanley asserted that when he called Stewart the day following the plaintiff's fall, Stewart acted surprised when informed of the accident.

■■ Stanley's testimony did not contradict or disprove the existence of the conversation; it merely cast doubt on Stewart's ability to recall the time of the conversation. The attempted impeachment of the witness was on a collateral matter and inadmissible. *People v. Byer* (1979), 75 Ill. App. 3d 658, 394 N.E.2d 632; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.

The plaintiff's final argument concerning rebuttal pertains to Barr's testimony concerning the plaintiff's allegedly improper use of a pole at the time of the second accident. The trial court excluded the rebuttal testimony of Hubney who stated in an offer of proof that the plaintiff's use of the pole was a customary and normal procedure in the industry.

■■ We agree with the plaintiff that the court should have allowed Hubney to rebut Barr's testimony. However, we believe that this error was harmless. The testimony concerning the use of the pole was relevant only to the determination of the cause of the second accident which occurred at a private residence. The plaintiff had maintained that the injuries he sustained in the first accident at Clark were the proximate cause of the second fall. Because the jury found Clark not guilty of any

negligence in the first accident, it was unnecessary for it to consider the cause of the second accident. Thus, the plaintiff suffered no prejudice from the exclusion of Hubney's testimony.

The plaintiff next asserts that on four occasions the trial court prevented him from properly impeaching various witnesses with their prior inconsistent statements. We find no contradiction between the trial testimony of the witnesses and the related deposition testimony which would require impeachment, and, consequently, we reject this argument.

■■ Finally, the plaintiff argues that the trial court erred by refusing to admit into evidence the photograph of the showroom. The admissibility of photographs is a matter within the discretion of the trial court (*Levenson v. Lake-To-Lake Dairy Cooperative*), and we do not believe that the trial court abused its discretion.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed. In view of our affirmance, it is not necessary for us to consider the issue raised by Clark in its conditional appeal.

Affirmed.

McNAMARA and SIMON, JJ., concur.