DANIEL HALL, Ex'r of the Estate of Lillian M. Hall, Deceased, Plaintiff-Appellant, v. NORTHWESTERN UNIVERSITY MEDICAL CLINICS, Defendant-Appellee.

First District (2nd Division)   No. 86—0049

Opinion filed January 27, 1987.—Rehearing denied February 24, 1987.

718

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose and Deborah Benton, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Daniel Hall brought a medical malpractice action against Northwestern University Medical Clinics (defendant-appellee herein), arising from the death of his mother, Lillian Hall. Mrs. Hall died on January 18, 1975, and her death certificate listed respiratory arrest and metastasized rectal cancer as the cause of her demise. Following a jury trial, a verdict was returned in defendant's favor, and this appeal followed. We affirm the judgment of the circuit court.

On July 30, 1973, Mrs. Hall visited defendant-clinic complaining of constipation and of bloody stools. At the clinic, she saw Dr. John Hare, who took her medical history, ordered tests, and scheduled her for another appointment on October 1, 1973. Dr. Hare was not of the opinion that Mrs. Hall had a tumor of the colon, and stated that there were no clinical findings to warrant further tests in July 1973. When Mrs. Hall returned to the clinic, she felt generally well and did not complain of any constipation. Dr. Hare again took a complete history, examined her physically and performed a digital rectal examination. He concluded that she had arteriosclerotic heart disease, angina pectoris and hypertension. Test results confirmed that Mrs. Hall had a previous heart attack.

Mrs. Hall returned to the clinic on November 12, 1973; she did not complain at that time of any constipation or bowel problems. Dr. Hare again did a complete physical examination, and prescribed treatment accordingly. He saw Mrs. Hall again in June 1974.

Mrs. Hall was admitted to Edgewater Hospital on October 8, 1974, at which time her cancer was diagnosed. As noted, she passed away in January 1975. She was 79 years old at the time of her death.

Dr. Hare was initially named as a defendant in the malpractice suit by plaintiff, but he was never served with process and was accordingly dismissed by the circuit court. Plaintiff attempted to impeach Dr. Hare by inquiring as to how he was being paid for his attendance at trial. Defendant's objections to this inquiry were sustained by the circuit court. During an in-chambers offer of proof, Dr. Hare stated that he was not being paid for his attendance; rather, he was attending the trial "as a point of honor." During the course of the trial, Dr. Hare was seated with defendant's counsel.

Dr. Thomas Bombeck testified as plaintiff's medical expert at trial. He stated that the cause of Mrs. Hall's bloody stools should have been determined by use of a proctoscope in 1973, when Mrs. Hall initially sought medical attention. The failure to do so, according to Dr. Bombeck, constituted a deviation from the accepted standard of medical care, and contributed to Mrs. Hall's ultimate death. Dr. Bombeck was of the opinion that decedent died as a result of cancer of the rectum. He opined that cancer kills by interfering with important bodily functions, and is treated by surgical removal before it can attack vital organs and functions. He admitted that cancer may exist in an individual without immediately producing any symptoms. Survival, in Dr. Bombeck's estimation, depended upon when the cancer had metastasized into other portions of the body. He acknowledged that Mrs. Hall's cancer may have spread prior to July 1973, and placed her

chances of survival at that point in time as 50-50.

Defendant's expert pathologist, Dr. Edwin Fischer, stated that before Mrs. Hall had consulted Dr. Hare at the clinic, her tumor had already spread to her liver and lungs, and was beyond the benefit of surgical repair. This spread occurred, according to Dr. Fischer's testimony, during that period of time prior to the manifestation of cancer symptoms. Dr. Fischer offered his expert opinion that, after the metastasis of the cancer, Mrs. Hall was effectively beyond the aid of medicine. He based his conclusion that the cancer had already spread on a mathematical calculation of the growth of a tumor, assuming a rapid rate of growth. Dr. Fischer also stated that Mrs. Hall had an advanced heart condition, and that this was also a possible cause in her death. Finally, Dr. Fischer opined that there was no negligence on the part of defendant or Dr. Hare, despite the failure to diagnose the cancer, as it had already spread and nothing could have been done to treat decedent effectively.

Appellant requested leave to call a rebuttal expert to contradict Dr. Fischer's opinion that the early detection of a cancer is irrelevant to its treatment if it was "predisposed" to metastasize, claiming that this testimony was a surprise. Dr. Bombeck had already stated that the early detection and treatment of cancer was important. Dr. Bombeck also had testified on the growth rates of cancers and their spread. He stated that he could not say with certainty whether the cancer had spread in July 1973, and opined that any such conclusion was "[b]alderdash. No physician, no physician of experience in dealing with colon cancer, would make that statement." The circuit court denied plaintiff's request.

Additionally, the circuit court denied plaintiff's attempt to amend his complaint, after the jury had been impanelled, to add another count under the Wrongful Death Act and the Survival Act. The court instructed the jury, over plaintiff's objections, on the use of prior inconsistent statements, and gave the jury only the first sentence of the standard instruction on proximate cause where plaintiff had requested the first and last sentences. The jury returned a verdict for defendant, whereupon plaintiff appealed.

On appeal, plaintiff first challenges the circuit court's decision to deny the admission of expert rebuttal testimony concerning the pathology of cancer cells. Dr. Fischer testified on defendant's behalf in this regard, and allegedly surprised plaintiff with his statement that early detection was irrelevant herein because the cancer was "predisposed" to spread and indeed had already done so at the time Mrs. Hall first saw Dr. Hare. Plaintiff alleged that Dr. Fischer's testimony

was at odds with recognized medical teaching, and that he had a rebuttal expert, a Dr. Perkins, prepared to testify in rebuttal. Defendant objected, noting that plaintiff had not disclosed Dr. Perkins' identity prior to trial despite requests for such disclosure.

In an offer of proof, plaintiff's counsel stated:

"[I]f called to testify, [Dr. Perkins] was ready, willing, and able to testify to the opinion that the testimony of the defendant's expert, Dr. Fisher [*sic*], was not based upon sound scientific or mathematically accepted principles and, in particular, that portion of the testimony concerning the mathematical equations or extrapolating backwards from the position of a one-centimeter cancerous tumor to its origin of a one-celled entity which can be calculated with some degree of medical certainty. We believe that our witness would have testified that that was not based upon sound scientific or medical principles *** ."

The circuit court, as noted, rejected plaintiff's attempt to present Dr. Perkins' testimony to the jury.

■ Rebuttal evidence is that which tends to explain, repel, contradict, counteract or disprove facts already placed in evidence by an adverse party. (See *Rodriguez v. City of Chicago* (1974), 21 Ill. App. 3d 623, 316 N.E.2d 88; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473 N.E.2d 1322.) The decision to allow or deny the introduction of rebuttal testimony is charged to the sound discretion of the circuit court (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082), and the court's decision will not be set aside unless that discretion is abused (*Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345). In this case, we cannot conclude that the circuit court abused its discretion.

■ ■ Our determination is grounded upon several considerations. Initially, we note that Dr. Fischer stated that the cancer had already spread to decedent's liver and lungs, and was therefore not surgically removable. Dr. Bombeck acknowledged that this might in fact be true. Whether early detection of cancer would be helpful would therefore be of no import to plaintiff's case. If plaintiff sought to rebut Dr. Fischer's statement (that early detection of a cancer which was predisposed to metastasis was irrelevant to treatment), such rebuttal would be collateral to disposition of the case. Rebuttal evidence must address material issues and not collateral matters (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082), or it is properly denied. Moreover, Dr. Bombeck had already testified that early detection was generally accepted in the medical community as a significant factor in

the treatment of cancer. If Dr. Perkins' testimony was directed at establishing that fact, then his testimony could properly be deemed cumulative of that adduced through Dr. Bombeck.

Similarly, if plaintiff sought to rebut Dr. Fischer's estimate of the growth rate of cancers, as indicated by his offer of proof, again that testimony would be cumulative. Dr. Bombeck had succinctly labelled such calculations as "balderdash," and opined that no experienced physician would make such a statement.

Finally as to this issue, we note that plaintiff's offer of proof consisted entirely of counsel's assertion that Dr. Perkins would contradict Dr. Fischer's statements on the growth rate of cancers. If Dr. Perkins' testimony would merely consist of that contradiction, then it would be identical to Dr. Bombeck's previous testimony. If Dr. Perkins' testimony would extend beyond that matter, however, then it was incumbent on plaintiff to place those matters on the record during the offer of proof. While a formal offer of proof, in the form of questions to the witness outside the hearing of the jury, is no longer the sole means of perfecting appeal from the denial of an evidentiary request (see *Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 390 N.E.2d 417), the unsupported speculation or conjecture of counsel is insufficient. A party cannot obtain reversal based on the failure to admit evidence without showing what that evidence would be in order to allow a court of review to assess the prejudice inuring from the exclusion. (*Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 569, 476 N.E.2d 1; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 91, 438 N.E.2d 924.) Based on plaintiff's offer of proof, we can only conjecture as to what Dr. Perkins might say in addition to Dr. Bombeck's terse condemnation of Dr. Fischer's calculations. This speculation cannot suffice to reverse the circuit court's determination. We cannot find any abuse of discretion, and accordingly we reject plaintiff's contention that reversible error occurred.

Plaintiff next contends that the trial court's refusal to allow him to amend his complaint to add a count was erroneous. Plaintiff did not ask for this amendment until after the jury had been impanelled.

There is no absolute right to amend pleadings, and the timeliness of such a request is a discretionary determination on the part of the trial judge. (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1096, 428 N.E.2d 1051.) Amendments must be made on "just and reasonable terms." (Ill. Rev. Stat. 1985, ch. 110, par. 2—616.) The circuit court's power to permit amendments should be exercised with a view toward allowing a party to fully present his causes of action. (*Morris v. City*

*of Chicago* (1985), 130 Ill. App. 3d 740, 746, 474 N.E.2d 1274.) Ordinarily, however, amendment should not be allowed where the matters asserted were known to the party requesting amendment when the original pleading was drafted, and for which no excuse is offered to explain the initial failure. (*Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 492, 470 N.E.2d 1264.) The test to be applied in measuring whether the circuit court's discretion was abused is to ask whether the decision furthers the ends of justice. *Murphy v. Roppolo-Prendergast Builders, Inc.* (1983), 117 Ill. App. 3d 415, 453 N.E.2d 846.

■■ It does not appear that the ends of justice would have been furthered by permitting the amendment in this case. The denial of the amendment went only to the *extent* of plaintiff's potential recovery, and not to his *right* to recover. The latter was dependent upon plaintiff establishing a breach of defendant's duty to plaintiff's decedent. As the jury herein found, plaintiff had not established any negligence on defendant's part, and therefore had not established any basis for recovery in any event. Logically, if defendant's failure to diagnose the cancer in 1973 did not constitute actionable negligence, then plaintiff would not have been entitled to recovery on the rejected count. Accordingly, no reversible error occurred.

Moreover, we note that the events involved herein occurred between 1973 and 1975. The complaint was filed in 1976, and trial counsel entered his appearance in January 1983. The cause came to trial in October 1985. No reason has been offered explaining the failure to amend the complaint in a more timely fashion. Since the matters alleged in the amended complaint were clearly within plaintiff's knowledge when the original complaint was filed, we cannot find any abuse in the circuit court's refusal to permit this eleventh hour amendment.

■■■ ■ The next assignment of error addresses the jury instruction on causation. Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d) states:

> "When I use the expression 'proximate cause', I mean that cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

Plaintiff tendered an instruction containing the first and last sentences; the circuit court elected to give the jury only the first sentence of the instruction, after defendant objected to plaintiff's formulation of the IPI instruction.

It is recognized that any litigant has the clear right to have the jury instructed on his theory of the case. (*Willhite v. Goodman* (1978), 64 Ill. App. 3d 273, 381 N.E.2d 68.) It is equally clear that in order to maintain a challenge on appeal for insufficient instructions to the jury, a party must tender the appropriate instruction or be deemed to have waived the issue. Here, plaintiff's instruction lacked the second sentence (explaining contributing and concurrent causes). It was incomplete and inappropriate, waiving the issue. As stated in *Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 568, 361 N.E.2d 134, "[t]he mere tender of an Illinois Pattern Jury Instruction does not guarantee that it will be given. It must also be properly worded." Here, plaintiff's instruction contained the first sentence (defining proximate cause), and the last sentence (the effect of contributing or concurrent causes). It did not include the middle sentence (explaining other causes). As such, it did not accurately and completely state the law. It was therefore properly refused. See *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 210, 371 N.E.2d 1228.

■■ Plaintiff also contends that the court erred in giving the jury IPI Civil 2d No. 3.01, regarding the impeachment of a witness by prior inconsistent statements. In this regard, plaintiff asserts that his witness, Dr. Bombeck, had not been impeached. Defendant responds that it was not Dr. Bombeck but plaintiff himself who was impeached by prior inconsistent statements. The record shows that plaintiff indeed had been impeached on two occasions. On cross-examination, plaintiff stated that although he gave his mother half his paycheck, he could not recall what she did with it. In a deposition, he admitted that she used the money to buy clothes and cosmetics. He also stated on cross-examination that his mother was not entirely dependent on him for support, whereas in his deposition he had acknowledged that fact.

The question as to what issues have been raised by the evidence is within the discretion of the circuit court. (*Burge v. Morton* (1981), 99 Ill. App. 3d 266, 425 N.E.2d 539.) Here, as noted, plaintiff had given inconsistent statements. Accordingly, we must reject plaintiff's argument that the lack of such inconsistencies in Dr. Bombeck's testimony precluded giving defendant's instruction.

■■■ ■ The next issue concerns plaintiff's attempt to impeach Dr. Hare. Plaintiff had asked Dr. Hare how he was being paid for his attendance at trial, and the court sustained defendant's objection to that inquiry. Throughout trial, Dr. Hare was seated with defense counsel in the jury's presence. In an offer of proof, Dr. Hare stated that he was not being paid for his attendance, but was there as a matter of honor.

The credibility of a witness is always a material fact, and parties generally should be accorded the opportunity to fully cross-examine witnesses in order to test their veracity and to demonstrate to the trier of fact any prejudice, interest or bias those witnesses possess. (See *Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 466 N.E.2d 210.) Control of cross-examination is addressed to the sound discretion of the trial judge, whose decisions on the latitude given a party will not be disturbed absent an abuse of discretion. (*Cummings v. Chicago Transit Authority* (1980), 86 Ill. App. 3d 914, 408 N.E.2d 737.) In this case, it does not appear that any abuse occurred.

██ Although plaintiff's inquiry should have been allowed under *Sears*, that failure was not error, as had the question been allowed no impeachment would have resulted. To the contrary, the jury would have been apprised of the fact that Dr. Hare was present, not because he was being paid for his presence, but because he felt his honor demanded it. It was obvious to the jury that Dr. Hare's allegiance lay with defendant, as he was seated with defendant during the trial. Plaintiff appears more the beneficiary of the court's ruling than the victim. As such, no reversible error occurred.

██ Finally, plaintiff contends that the jury's verdict was against the manifest weight of the evidence. Plaintiff acknowledges that there were "discrepancies in the medical testimony." From that fact, and the admitted fact that Mrs. Hall had cancer which was not diagnosed when she first sought treatment, plaintiff claims that the verdict must be reversed.

The question as to what evidence to believe and what evidence to reject is a decision for the trier of fact, whose determination will not be upset on review unless manifestly erroneous. (*Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345.) Here, the jury chose to accept Dr. Fischer's opinion, which exonerated defendant of liability. Since plaintiff concedes that there was conflicting evidence, and since plaintiff has not pointed out any reason to reject Dr. Fischer's opinion, the jury's verdict is inviolate.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and BILANDIC, JJ., concur.