THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWIN D. PHILLIPS, Defendant-Appellant.

First District (6th Division) No. 1—85—3216

Opinion filed July 21, 1989.—Rehearing denied September 5, 1989.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Pamela Hughes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Edwin Phillips, was tried by a jury in the circuit court of Cook County on charges of possession and delivery of less than 30 grams of a controlled substance. He was found guilty on both counts, but judgment was entered on the delivery of a controlled substance count only. Defendant was sentenced to seven years' imprisonment and two years' mandatory supervised release. Defendant now appeals his conviction. We affirm.

Defendant's trial began with the *voir dire* examination of prospective jurors. During that proceeding, the State peremptorily excused three prospective jurors. Of the three prospective jurors excused by the State, one was a white man, one was a white woman, and the third was a black woman, Gladys Hayes. The defense objected to the State's challenge of Ms. Hayes and moved for a mistrial alleging that this challenge evidenced the State's systematic exclusion of blacks during the jury selection process. The trial court gave the State the opportunity to explain why it had excused Ms. Hayes, but the State refused to explain its challenge because, the State argued, it was unnecessary, inasmuch as the defendant had not and could not show that the State had systematically excluded blacks from the panel. The court thereafter denied defendant's motion. The final panel of selected jurors was composed of 14 individuals, and two or three of the 14 were black persons.[1]

At the beginning of the trial, the judge informed everyone, including the jurors and counsel, that the trial would begin each day promptly at 10:30 a.m. and would continue until 5 p.m. The State then began its case and presented the testimony of Chicago police officer McLaughlin.[2] He testified that he had been close friends with the defendant, a former Chicago police officer, since 1979 when they served together as partners. They remained close friends until sometime in 1980, when they had a disagreement after McLaughlin criticized the defendant for selling drugs. McLaughlin testified that, during this conversation, he had told defendant that selling drugs was wrong, and that defendant responded that if he got caught, he would then merely spend 10 years in jail, lift weights, come out and sell

---

[1]The record shows that the trial judge and the attorneys were not even sure of the exact racial composition of the jury. Apparently, the race of one of the jurors was not visually discernible.

[2]Officer McLaughlin's first name is unclear. The record and the briefs refer to him as either Aroterick, Roderick, A. Roderick, A. Robert or Anthony. There does not appear to be any significance to this discrepancy insofar as the legal issues in the case are concerned.

more drugs. McLaughlin said that the defendant also told him that he (defendant) believed he was providing a service to people by selling drugs. Later, in September 1981, McLaughlin testified that he told Sergeant Thomas Chandler of the Internal Affairs Division (IAD) of the Chicago police department, a close friend of his for many years, of an incident where a policeman had sold drugs. McLaughlin said that as a result of this conversation, he began to take part in IAD investigations as a special undercover agent.

On the morning of March 23, 1982, McLaughlin received a telephone call from the defendant, who told McLaughlin that if he wanted to buy some cocaine, he should come to defendant's home later that morning. McLaughlin called Chandler and told him of the defendant's call, and McLaughlin and Chandler agreed to meet. Thereafter, McLaughlin met with Chandler and Investigator Howard, and all three men went to the criminal courts building at 26th and California in Chicago, where McLaughlin was fitted with electronic surveillance and transmitting equipment. McLaughlin was also given $100 in premarked money.

McLaughlin said that he then drove to defendant's home at 6815 South Crandon[3] in Chicago, while Chandler, Howard, and other officers followed him in a van full of electronic equipment designed to record any conversations transmitted from the device McLaughlin was wearing. When McLaughlin arrived at defendant's home, McLaughlin testified that defendant, in exchange for $100, gave him two paper envelopes in a plastic bag. The substance in the envelopes was later analyzed and found to be .87 of a gram of cocaine. McLaughlin denied that he had used drugs and stated that he had only purchased the drugs as part of the prearranged plan. In addition, during the course of McLaughlin's testimony, the State submitted the tape recording of the conversation concerning the transaction between the defendant and McLaughlin on March 23, 1982, which was admitted by the court, and which, essentially, substantiated McLaughlin's testimony.

The State then called Sergeant Chandler, who testified that he and McLaughlin had been close friends for years and related primarily the same chain of events leading to the sale of the cocaine by the defendant. Later, during cross-examination, defense counsel asked Chandler whether another officer, Pamela Grant, had made allegations or filed a report to the effect that he, Chandler, had previously

---

[3]Also referred to as 6813 in the record. Again, this is not of significance to the legal issues in the case.

sold drugs himself. Chandler responded by denying that any allegations or any such report had been made. The State objected, and the trial court sustained the objection, ruling that the alleged report which defense counsel claimed was the reason for this inquiry did not establish a legitimate basis for cross-examination of Chandler, because it relied solely upon rumor and speculation. Defense counsel then, in a sidebar conference, produced the report and stated to the court that this report, which he said was signed by someone named "Arthur," stated that a Sergeant Nathan Gibson of the IAD had told this "Arthur" of rumors that Chandler had been arrested by Federal authorities for dealing in cocaine. Defense counsel also stated that the report demonstrated that "Arthur" had talked to another officer, Officer Kirkling, who had told "Arthur" that Pamela Grant told him (Kirkling) that she was working on a narcotics investigation involving Chandler and the sale of cocaine. Defense counsel concluded his remarks by noting that the report was also signed by Chandler. The court then reiterated that the State's objection was sustained, and the report was not included as part of the trial record.

The State did not present any additional evidence, and, at this point, the State rested its case. Since the time of the day was only approximately 3 p.m., the trial judge then told defense counsel he should begin to present his witnesses because, the judge said, he had previously advised everyone that the proceedings would continue each day until 5 p.m. However, defense counsel informed the court that his witnesses were not ready at that time, and that he was not, therefore, prepared to go forward with his witnesses. The trial judge then asked defense counsel if the defendant was going to testify. Defense counsel answered that defendant was not going to testify. The court called the defendant to the bench and the following exchange took place:

"THE COURT: Ordinarily, Mr. Phillips, I would not, in any way, interfere with the order of witnesses called, because you are represented by a fine attorney. Sometimes the order of witnesses can be a matter of strategy. However, I [have] advised the parties I would go to five [o'clock]. In [this] case, some two hours will be lost. The one way in which they can be saved, you understand, [is] if you choose to testify today. You are not going to be allowed to change your mind tomorrow.

THE DEFENDANT: Yes, your honor, I am aware of that.

THE COURT: If you decide not to testify, that is the decision that you chose to do.

THE DEFENDANT: I make the decision that I will not, your Honor."

During this exchange, defense counsel made no objections.

The next morning defense counsel informed the court that he wanted to present some witnesses who would impeach McLaughlin's testimony that McLaughlin had not used drugs. Defense counsel did not specify who those witnesses would be, nor did he explain the specific nature of the impeaching testimony, other than to merely suggest that these witnesses would testify that McLaughlin had used drugs. The trial judge advised counsel that, in his opinion, the question of McLaughlin's alleged drug use was a collateral issue as a matter of law and relying on *People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 458 N.E.2d 504, and *People v. Byer* (1979), 75 Ill. App. 3d 658, 669, 394 N.E.2d 632, 640, denied defense counsel's request. The court did, however, offer the defendant the opportunity to present these witnesses outside the presence of the jury in order to preserve the record, but defense counsel chose not to do so.

Thereafter, defense counsel presented the testimony of Abigail Phillips, the defendant's wife, who said that McLaughlin had once brought certain stolen merchandise to her house in an attempt to dispose of the goods. She also stated that in February 1982, McLaughlin made a pass at her. After presenting this evidence, the defense rested.

The jury found the defendant guilty on the counts of possession and delivery of a controlled substance. The court, as stated earlier, entered judgment on the delivery count and the defendant was sentenced to seven years' imprisonment and two years' mandatory supervisory release.

Defendant raises five issues on appeal: (1) whether the trial court's requirement that defendant make an irrevocable decision to testify or not to testify, before the defense had presented its case, violated defendant's constitutional rights; (2) whether the State's exercise of a peremptory challenge to excuse a prospective black female juror violated defendant's equal protection rights; (3) whether the trial court's refusal to allow the defendant to cross-examine the State's witnesses regarding their alleged personal drug use and sale of drugs violated the defendant's right of confrontation; (4) whether the evidence which referred to defendant's long-standing involvement in the sale of drugs was properly admitted; and (5) whether the prosecutor's remarks in closing argument which expressed his personal beliefs and suggested that defendant was a professional drug dealer denied the defendant a fair trial.

The defendant first argues that the trial court erroneously required defendant to irrevocably decide if he would testify at the close

of the State's case in chief, before the defense had begun to present its case. The defendant claims that this action by the court violated his rights because he was forced to make a decision to testify or not without the opportunity to evaluate his decision in view of all of the evidence presented at trial. He claims that his right to view all of the evidence before making the decision to testify or not exceeded any court interest in the efficient use of judicial resources. The defendant also claims that this error was plain error because it involves the constitutional right of a defendant to testify any time before he rests his case. (See *Brooks v. Tennessee* (1972), 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891.) Accordingly, he concludes, the waiver rule does not apply in a case such as this, where there is a denial of an important and basic constitutional right.

The State, on the other hand, contends that the defendant waived this issue because he made no objection to the procedure at the time the trial judge asked the defendant whether he intended to testify, he made no request to testify at any time, and he did not raise this issue in his motion for a new trial. But, even if there was no waiver here, the State argues, there was no reversible error as a result of the court's action since the defendant knowingly and voluntarily relinquished his constitutional right to testify. The record here shows, the State asserts, that the defendant made the decision himself, without any coercion, that he fully understood his decision, and that he merely reaffirmed his decision not to testify when the court inquired whether he intended to testify.

■ A defendant in a criminal trial has a constitutional right to testify at his trial, if he chooses to do so, and a defendant cannot be required to make that choice before all of the defense evidence has been presented. (*Brooks*, 406 U.S. 605, 32 L. Ed. 2d 358, 92 S. Ct. 1891.) The issue presented here, whether a defendant can raise this issue for the first time on review, was considered by the Tenth Circuit Court of Appeals in *United States v. Rantz* (10th Cir. 1988), 862 F.2d 808. In *Rantz*, the trial court told the defendant that he would have to testify first in the presentation of his defense. Defense counsel immediately advised the court that the defendant was not going to testify and, in his opinion, could not testify because of the nature of the evidence against him, which included tape-recorded conversations. The defendant there also did not object at trial to the court's statement that if the defendant chose to testify, he would have to take the stand first. Instead, the defendant there, like the defendant here, raised the issue for the first time on appeal. The Tenth Circuit Court of Appeals stated that it was reluctant to allow a defendant to belat-

676

edly assert such a claim, but, nonetheless, did consider the claim there because of the mandate of the United States Supreme Court in the *Brooks* case. (*Rantz*, 862 F.2d 808.) The *Rantz* court held that although the trial court's requirement that defendant testify first was erroneous under *Brooks*, the error there was harmless because defense counsel had stated that it was a matter of pre-planned strategy for the defendant not to testify to avoid subjecting himself to a perjury charge. (*Rantz*, 862 F.2d at 813.) Thus, the Court of Appeals said the fact that the defendant did not testify was not a result of the trial court's requirement that the defendant testify first in the proceeding.

██ █ Since the defendant here has raised this issue for the first time on appeal, this issue might properly be deemed waived. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E. 2d 1124.) However, even if there was no waiver, it is still clear that the defendant's decision not to testify here, as in *Rantz*, was not made as a result of the court's direction, but was made independently before the defense was to begin the presentation of its case. (See *Rantz*, 862 F.2d 808.) This is, we believe, clearly reflected by the record. Before the judge informed the defense that defendant would have to testify immediately if he chose to testify, the judge had asked defense counsel if the defendant was going to testify and defense counsel unequivocally told the judge "no." Only then did the judge call the defendant to the bench and ask him if he understood that his decision to testify or not to testify was irrevocable. It was in this context that the defendant stated that he understood that he could not change his mind, and he then, explicitly, reaffirmed his decision not to testify, in any event. There were no objections by defense counsel at this time or at any other time during trial, or even later in the defendant's written posttrial motion. In fact, the defendant never made a request to testify. Additionally, we note that, similar to *Rantz*, the defendant here, if he had chosen to testify, would also have had to contradict not only Officer McLaughlin's direct testimony, but would also have had to contradict the tape recording of his conversation with McLaughlin concerning the sale of the cocaine. (See *Rantz*, 862 F.2d 808.) Thus, we conclude, as did the Court of Appeals in *Rantz*, that the trial judge's requirement that the defendant had to testify immediately, if he were to testify, although erroneous, was harmless error under the circumstances here since, in fact, there was no prejudice to the defendant as a result of this error.

The defendant next claims that his equal protection rights were violated when the State exercised a peremptory challenge against a prospective female juror who was black. The defendant contends that

his timely trial objection to the State's discriminatory use of its challenges requires a remand for a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which was decided while this case was pending on appeal. The fact that only one black was excused from the panel and two or three of the final panel of jurors were black, defendant claims, is irrelevant. In addition, defendant asserts that a *Batson* error is treated as plain error, and, thus, the waiver rule does not apply in such a situation either.

■ The State responds that the defendant again waived review of this issue by failing to include it in his motion for a new trial, but even if he had not, there is no *Batson* issue here. (See *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) Before a defendant can contest the peremptory challenges of the State, the *Batson* case requires that the defendant must first set forth a *prima facie* case of discrimination, and only when the defendant has done so does the burden shift to the State to establish a racially neutral reason for exercising its challenges. The defendant here, the State asserts, has not set forth a *prima facie* case, and consequently, the State had no duty to establish a racially neutral reason for exercising its challenge. It is only where the court finds that the defendant has presented a *prima facie* case of discrimination, the State asserts, that it must then demonstrate that it had a racially neutral explanation for the questioned challenges. *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351; *People v. Hooper* (1987), 118 Ill. 2d 244, 506 N.E.2d 1305.

■ We agree with the State that the defendant here failed to include this issue in his written motion for a new trial and, accordingly, waived this issue for appeal. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, even if the defendant had not waived this issue for appeal, the record clearly shows that the defendant could not establish a *prima facie* case of discrimination. Here, the State peremptorily excused three prospective jurors, and, of those, two were white persons and one was a black person. Moreover, while not a determinative factor in and of itself, we also note that there were two or three blacks on the final panel of jurors. Under these circumstances, the defendant has not shown a pattern of discrimination by the State, and, hence, he has not set forth a *prima facie* case of discrimination. Consequently, there is no basis to remand this case for a *Batson* hearing. *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

The defendant next claims that the trial court violated his right to confront the State's witnesses against him when the court limited his cross-examination of both McLaughlin and Chandler. He contends that

he should have been allowed to cross-examine McLaughlin on his alleged drug use and on McLaughlin's alleged suspension for accepting a bribe. Also, he argues that he should have been able to cross-examine Chandler about the so-called report by "Arthur" which suggested that Chandler himself was being investigated for selling drugs. Defendant asserts that the impeaching evidence he had proffered was not based on mere rumor or speculation and was relevant to McLaughlin's and Chandler's bias or motive to testify falsely. Thus, he contends that the trial court's refusal to allow this inquiry by defense counsel as impeachment was improper and violated his constitutional right to confrontation.

The State argues that the limitation on the use of impeaching evidence is within the trial court's discretion, and, in order for the defendant to show an abuse of discretion, the defendant should have made a proper offer of proof which would have shown, on review, the evidence to be presented and how it was relevant. Here, however, the State claims, there was no proper offer of proof by the defendant because defense counsel merely described the proposed evidence. Moreover, the State asserts, the proffered impeaching evidence was based on mere rumor and speculation, and was neither material nor relevant to the issue of bias or motive. Accordingly, the State concludes, there was no abuse of discretion by the trial court when it precluded the use of the impeaching evidence.

■■ Defense counsel is generally allowed wide latitude in cross-examining State witnesses for the purpose of showing their bias or motive to testify falsely, but the evidence upon which such inquiry by defense counsel is based cannot be remote or uncertain. (*People v. Johnson*, (1986), 150 Ill. App. 3d 1075, 1082, 502 N.E.2d 304, 309; *People v. Sanders* (1986), 143 Ill. App. 3d 402, 407, 493 N.E.2d 1, 4.) Additionally, the scope of proper cross-examination rests within the broad discretion of the trial judge, and unless the defendant can show that the court abused its discretion to the extent that the defendant was manifestly prejudiced, the trial judge's ruling will be affirmed. *Johnson*, 150 Ill. App. 3d at 1082, 502 N.E.2d at 309; *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E. 2d 1029.

■■■ Generally, in order to preserve an issue concerning the trial court's preclusion of impeaching evidence at trial, the defendant must set forth an offer of proof at trial to establish on the record, for purposes of review, that the evidence he sought to introduce was positive and direct on the issue of bias or motive to testify falsely. (See *Sanders*, 143 Ill. App. 3d at 407, 493 N.E.2d at 4-5.) Although formal offers of proof, where the proposed evidence or testimony is formally

offered in a question and answer manner outside the presence of the jury, are generally required to preserve the issue of whether preclusion of the evidence was proper, an informal offer of proof, where counsel merely summarizes what the proposed evidence or testimony may show, may be sufficient to preserve the error if it is specific enough in nature, and if it is not based merely on speculation or conjecture. (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 722, 504 N.E.2d 781, 785; *People v. Brown* (1982), 104 Ill. App. 3d 1110, 1119, 433 N.E.2d 1081, 1088-89; *Tolefree v. March* (1981), 99 Ill. App. 3d 1011, 1014, 425 N.E.2d 1247, 1250.) An offer of proof is sufficiently specific, therefore, if it adequately shows the court what the evidence would be, allowing a court of review to assess the prejudice allegedly inuring from the exclusion. See *Hall*, 152 Ill. App. 3d at 722, 504 N.E.2d at 785.

 Here, defense counsel made only informal offers of proof, and we find that these informal offers of proof were not sufficiently specific to preserve the alleged errors for review. Defense counsel's informal offers of proof consisted of merely a brief description of what counsel's proposed evidence would show. Counsel never stated who the proposed witnesses were that would testify that McLaughlin had used drugs, nor did he give a detailed explanation as to how these proposed witnesses knew of McLaughlin's alleged drug use. In addition, there was no specific explanation concerning defense counsel's assertion that McLaughlin was suspended for taking a bribe. Finally, the informal offer made by defense counsel concerning Chandler's alleged involvement in the sale of drugs consisted solely of counsel's statements regarding the contents of the document. That document, however, was not made a part of the record on appeal. Therefore, the informal offers of proof here were insufficient to show that the defendant was prejudiced by the trial court's preclusion of this evidence or testimony.

Even if we were to find that the offers were sufficient, however, we agree with the trial judge that all of the alleged impeaching matters here were either collateral or based on mere rumor and speculation. (See *People v. DeSavieu* (1984), 120 Ill. App. 3d 420, 430, 458 N.E.2d 504, 511-12 (impeachment of witness on alleged drug addiction improper where no evidence of addiction could be shown).) Moreover, we cannot say that the trial judge abused his discretion here, for the trial judge clearly suggested to defense counsel that he make formal or more detailed offers of proof, yet defense counsel failed to do so.

Defendant's fourth contention on appeal is that he was denied a fair trial when evidence that suggested his long-standing involvement

in drug peddling was introduced and was later referred to in the State's closing argument. This evidence should not have been admitted, defendant asserts, because it was brought out only by way of McLaughlin's unresponsive answers to defense questions on cross-examination. This evidence was highly prejudicial, defendant claims, and thus, the evidence itself and the references to it should have been stricken.

The State asserts that the admission of this evidence, in response to defense counsel's questions on cross-examination, was proper since the defendant had opened the door to this evidence on cross-examination by asking McLaughlin numerous questions about a disagreement he had had with defendant. The cross-examination, the State claims, was merely an attempt by defense counsel to mislead the jury into believing that the disagreement between McLaughlin and the defendant was about McLaughlin's alleged sexual advances towards defendant's wife, when, in fact, it had not been. Thus, the State claims, because the defendant opened the door to the inquiry, McLaughlin's testimony concerning his disagreement with the defendant was proper, as was the State's redirect examination of McLaughlin to correct any misconceptions created by defense counsel's cross-examination.

 It is well settled that if one party opens up an inquiry concerning an issue, the other party may be allowed to introduce contradictory or explanatory evidence even though it would not have been admissible initially. (*People v. Marino* (1980), 80 Ill. App. 3d 657, 666, 400 N.E.2d 491, 498; see also *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) Hence, an accused cannot interject an issue into a case and then argue that it was error to bring the issue to the jury's attention. *Marino*, 80 Ill. App. 3d at 666, 400 N.E.2d at 498.

The specific exchange between defense counsel and McLaughlin on cross-examination here began when defense counsel asked McLaughlin if the nature of his friendship with defendant had changed, and McLaughlin answered that it had changed in 1979. Defense counsel then asked McLaughlin if he had ever told the defendant that the nature of their friendship had changed, *i.e.*, if McLaughlin had ever told the defendant that he felt they were not close friends anymore. McLaughlin answered affirmatively, and defense counsel went on to ask:

"Q. What day was that?

A. It was 1980, as I recall, we were working \*\*\* and I asked Mr. Phillips, I said, 'Do you know that selling drugs is wrong?' And Mr. Phillips said, 'Yes.' He said if he gets caught, he will do ten years."

Defense counsel asked to have the answer stricken as being unresponsive, and the trial court denied that request, but told defense counsel that he could withdraw the question, which defense counsel agreed to do. The judge then stated that the response was stricken. However, defense counsel continued to ask numerous additional questions about this disagreement and this particular date. Defense counsel asked McLaughlin if he ever made a report about this disagreement, and then asked if there were any other disagreements. When McLaughlin responded to defense counsel's inquiry that there had been only one disagreement and attempted to explain that this disagreement was the same one that he had referred to earlier, defense counsel again asked him for the specified dates when the disagreement developed. Finally, defense counsel asked:

"Q. You continued the social relations with the defendant after this *** argument in the summer of 1980?

A. Yes, I did.

Q. Wasn't it the same type of relationship after the argument in July, 1980?

A. No, it wasn't."

■■■ We believe that the initial response by McLaughlin to defense counsel's question did exceed the bounds of a proper response to counsel's question here and should have been stricken. However, whether defense counsel would have pursued this inquiry if that had been done need not be examined, because, even if there was error here, we believe the error was harmless, since the remaining evidence against the defendant in the case was more than sufficient for the jury to have found him guilty beyond a reasonable doubt. Furthermore, defense counsel's continued questioning on this matter after the initial question and answer were withdrawn did provide the basis for the State's request to clarify the conversation by redirect examination. Thus, to the extent that questions were asked about the relationship on redirect by the State, these were invited by the defense.

The defendant finally claims that he was denied a fair trial by the prosecution's comments in closing argument. He contends that the remarks by the State in closing argument which expressed the prosecutor's personal belief that defendant was guilty and suggested defendant was a professional drug dealer constituted reversible error. The State argues, again, that this issue was not properly preserved for review because there were no objections during the closing argument, nor were these remarks included in defendant's motion for a new trial. In any event, the State notes that the remarks concerning the prosecutor's personal beliefs, even if improper, amounted only to

harmless error, and the remarks suggesting that defendant was a professional drug dealer were based upon reasonable inferences from the evidence and, again, even if improper, amounted only to harmless error.

■■ ■ A reference in a post-trial motion to "prejudicial" or "erroneous" statements in closing argument, without factual detail, is not enough to preserve the issue for review. (See *People v. David* (1986), 141 Ill. App. 3d 243, 489 N.E.2d 1124; see generally *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (purpose of post-trial motion is to limit consideration to errors considered significant so that appeal is not open-ended).) The scope of permissible error in closing argument is within the sound discretion of the trial judge, and prosecutors are generally allowed wide latitude in closing arguments. (*People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 N.E.2d 1250.) Remarks in closing argument that are based on the evidence or reasonable inferences therefrom are generally proper (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746), but, a prosecutor's expression of his or her personal beliefs is generally regarded as improper (*United States v. Young* (1985), 470 U.S. 1, 84 L. Ed. 2d 1, 105 S. Ct. 1038).

■■ Here, it is clear that the remarks concerning the prosecutor's statements of personal beliefs were waived on review under *Enoch* by the defendant's failure to specify this error in his post-trial motion. (See *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) But even if there had been no waiver, it is also clear that the remarks of the prosecutor which expressed personal beliefs were not so serious as to constitute reversible error. Additionally the prosecutor's remarks that the defendant was a professional drug dealer were arguably based on reasonable inferences from the evidence adduced from McLaughlin's testimony. Nevertheless, again, even if these remarks were improper, they, too, were not of such a serious nature to require reversal under the circumstances here.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Judgment affirmed.

EGAN, P.J., and McNAMARA, J., concur.