THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY JONES, Defendant-Appellant.

First District (6th Division)   No. 1—91—0244

Opinion filed November 20, 1992.—Modified on denial of
rehearing January 22, 1993.

Michael J. Pelletier and Todd Avery Shanker, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Sari London, Special Assistant State's Attorney, and Renee Goldfarb and Lisa Goldsand, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Jerry Jones, was convicted of aggravated battery involving great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)) and was sentenced to a term of two years. Defendant was found not guilty of aggravated battery to a corrections officer (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)). On appeal,

defendant contends that the trial court violated his right of confrontation by restricting his cross-examination of the State's complaining witness; that the State improperly impeached defendant based on his post-arrest silence; and that remarks made by the prosecutor during opening statement and closing argument were so prejudicial as to deprive defendant of a fair trial.

The facts are as follows. On March 11, 1989, defendant was in custody at Cook County jail awaiting trial for unrelated charges and was assigned to division 4, unit N1. The sole supervisor of unit N1 on that day was Officer Jeffrey Caliendo.

Caliendo testified that at approximately 2:30 p.m. he observed defendant and another inmate arguing near a picnic table on the first level of unit N1, and it appeared as though a fight was imminent. Consequently, Caliendo telephoned Lieutenant Michael Dembrosz and requested permission to lock down the inmates early due to the possibility of violence. The unit housed 60 inmates and was overcrowded, with many inmates having to sleep on mats on the floor. Because of the overcrowding, tension among the inmates was high.

Within a minute or so of the telephone conversation with Caliendo, Dembrosz arrived at the unit to back up Caliendo during lock up. Caliendo instructed the inmates who had assigned cells to go to them, and he locked up the lower level cells. He then proceeded up to the top level, where he noticed defendant arguing outside his cell with the same inmate, with fists clenched positioned to fight. Caliendo ordered them to go to their cells, and the other inmate complied. Defendant moved toward his cell, but then stopped in front of his cell door. Defendant told Caliendo that if Caliendo wanted him in his cell, he would have to put him there. Caliendo repeated his request for defendant to get into his cell.

At this point, defendant turned as if he were going to enter his cell, but then turned back and struck Caliendo in the left eye with his right fist. In an attempt to subdue defendant, Caliendo took defendant by the arms and pulled him to the floor to handcuff him. Defendant escaped Caliendo's grasp and both men stood up. Defendant struck Caliendo again, this time punching him in the right eye. Caliendo fell to his knees and noticed he was bleeding from his right eye. He felt at least three more blows to the back of his head, but did not see who was hitting him. Caliendo grabbed a bedsheet to stop the bleeding and saw defendant walk by him. On direct examination, he stated that five or six inmates were standing about five or six feet from where the incident occurred. On cross-examination, he testified

that no inmates were standing in close proximity, though two or three other inmates were lying nearby during the incident.

Dembrosz testified that he was in the control room while Caliendo was locking up the inmates. He had a direct line of sight from the control room to the upper level of the cell block. He observed defendant and Caliendo apparently conversing outside defendant's cell, and then saw defendant punch Caliendo in the face. Dembrosz immediately telephoned for assistance. He observed Caliendo attempt to handcuff defendant, at which time defendant broke away and punched Caliendo in the face a second time. Dembrosz was unable to assist Caliendo because he had to remain in the control room to let the assisting officers into the unit upon their arrival. Five or six officers arrived momentarily, and after Caliendo pointed to defendant, they handcuffed defendant and removed him from the unit.

Caliendo was taken to the divisional paramedic for initial medical treatment and was then sent to Cermak Hospital, where he received stitches on his upper and lower eyelids. Later, he went to West Suburban Hospital for X rays. Caliendo subsequently underwent two separate surgeries to his right eye.

On cross-examination, Caliendo stated that he had filed a claim for workers' compensation benefits as a result of the incident. Caliendo was then questioned about receiving money from the claim and about whether he had filed civil lawsuits against the county and defendant because of his injuries. The trial court sustained the State's objections to these questions.

Defendant was also taken to the divisional paramedic. Dembrosz stated this was done pursuant to policy because there had been a physical confrontation between an inmate and correctional officer. Dembrosz noticed no injuries to defendant, nor did he see any officers or inmates hit defendant.

Defendant testified that on the day in question he was playing chess at one of the picnic tables in unit N1, when he was confronted by a fellow inmate who said he was not supposed to be playing a chess game because he wasn't a "Folk," meaning a "Disciples" gang member. Defendant told the inmate to "go to hell," and this response caused a crowd of inmates to gather around the table. Defendant stood and walked up the stairs to his cell, followed by a group of inmates led by the inmate whom Caliendo had previously observed arguing with defendant. This inmate told defendant he was going to "kick his ass." He swung at defendant, then kicked him, causing "a whole bunch of fighting" among the inmates. Defendant was kicked and punched by a group of gang members, and was then grabbed

from behind in a "full Nelson," thrown to the floor, where he was kicked and stomped, and was eventually handcuffed. He further stated that he was jumped on and beaten some more by the assisting officers who had arrived at the unit, then dragged to the bathroom where he was beaten again. He did not see Caliendo during the incident, but saw him later in the dispensary where Caliendo identified defendant as the inmate who had punched him. Defendant stated that he requested but was refused medical treatment for his injuries.

In rebuttal, the State called Sergeant McClendon, who conducted a disciplinary hearing three days after the incident. At that hearing, McClendon interviewed defendant to obtain his version of the events surrounding the incident. McClendon testified that during the interview, defendant, in describing the incident, stated, "Not guilty. I was on the top deck talking when the officer came and grabbed me from behind then struck me and I struck him back."

McClendon gave the following answers in response to the State's questions regarding the interview with defendant, without objection by defense counsel:

> "MS. DEMACOPOULOS [Assistant State's Attorney]: At anytime did he [defendant] tell you that any correctional officers repeatedly beat him in the day room?
>
> McCLENDON: No.
>
> MS. DEMACOPOULOS: At anytime did he tell you that any correctional officers repeatedly beat him inside the bathroom?
>
> McCLENDON: No.
>
> MS. DEMACOPOULOS: At anytime did he tell you that gang members in that division had struck him repeatedly?
>
> McCLENDON: No.
>
> MS. DEMACOPOULOS: Did he tell you that he had been bleeding from the nose?
>
> McCLENDON: No.
>
> MS. DEMACOPOULOS: Did he tell you that he was bleeding from his ears?
>
> McCLENDON: No.
>
> MS. DEMACOPOULOS: Did he tell you he had a busted lip?
>
> McCLENDON: No."

On cross-examination, McClendon testified that defendant did not know the name of the officer who grabbed him from behind. McClendon further stated that defendant told him he was not injured, and consequently, he made no note as to injuries in his report. McClendon stated that there was gang intimidation in all units, but he inter-

viewed no inmates about the incident because defendant made no such request.

Prior to trial, mutual motions *in limine* were granted, by which the trial judge ruled inadmissible any comment or evidence regarding the charges for which defendant was awaiting trial when the incident took place. The trial judge also ruled inadmissible any evidence of the fact that those same charges had been dismissed pending appeal. The State's motion to prevent defendant from bringing in evidence that he had never been convicted of a felony offense was also granted.

Defendant first contends that the trial court violated his sixth amendment right of confrontation and right to a fair trial by precluding him from cross-examining Caliendo regarding the details of his workers' compensation claim and other civil lawsuits he may have filed against the county or defendant as a result of his injuries. Defendant argues that this was a proper subject for cross-examination because it was designed to show Caliendo's interest, bias and motive to testify falsely against defendant.

Generally, defense counsel is allowed wide latitude in cross-examining State witnesses for the purpose of showing their bias or motive to testify falsely (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526), but the evidence upon which such inquiry is based cannot be speculative, remote or uncertain. (*People v. Phillips* (1989), 186 Ill. App. 3d 668, 542 N.E.2d 814; *People v. Sanders* (1986), 143 Ill. App. 3d 402, 493 N.E.2d 1.) Furthermore, the proper scope of cross-examination rests within the broad discretion of the trial judge and is subject to reversal only where there is an abuse of that discretion which results in manifest prejudice to the defendant. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) We have held that there is no such abuse unless an offer of proof demonstrates that the excluded evidence is positive and direct on the issue of bias or motive to testify falsely, rather than remote or uncertain. *People v. Winfield*, 113 Ill. App. 3d 818, 447 N.E.2d 1029.

Moreover, an offer of proof is particularly necessary in a case such as this, where the trial judge precludes defendant from eliciting potentially impeaching testimony from a State witness, for without it the reviewing court is unable to assess the prejudice, if any, inuring from the exclusion. (*People v. Phillips*, 186 Ill. App. 3d 668, 542 N.E.2d 814; *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 504 N.E.2d 781.) Defendant made no such offer of proof here.

■ We find, therefore, that the trial judge did not abuse his discretion by precluding further inquiry into this area. Defendant made

no attempt to explain to the trial judge the impeaching evidence he expected to elicit from Caliendo with respect to either the workers' compensation claim or other lawsuits against the county and/or defendant. We take note of the fact that, without objection, defense counsel was able to learn from Caliendo that he had in fact filed a claim for workers' compensation benefits, and any possible bias or motive to testify falsely was revealed by Caliendo's admission in this regard. As an aside, we fail to see how Caliendo's claim for workers' compensation benefits demonstrated his bias or motive to testify falsely against defendant, particularly since such benefits would be available to him regardless of who injured him, so long as he was injured within the scope of employment. It is undisputed that Caliendo was injured within the scope of his employment as a correctional officer at Cook County jail.

It was only when defense counsel began questioning Caliendo about receiving money for his injuries, and about other civil lawsuits against the county and defendant, that the trial judge sustained the State's objections. There was no evidence that Caliendo had in fact filed, or even contemplated filing, any civil actions against the county or defendant. In Illinois, "the trial court properly exercises its discretion when it precludes the cross-examination of a prosecution witness concerning a civil lawsuit arising from the incident in question where there is no indication that any civil action was actually filed or contemplated." *People v. Crosser* (1983), 117 Ill. App. 3d 24, 30, 452 N.E.2d 857, 862; see also *People v. Denby* (1981), 102 Ill. App. 3d 1141, 430 N.E.2d 507; *People v. Bradford* (1979), 78 Ill. App. 3d 869, 397 N.E.2d 863.

Moreover, we disagree with defendant's assertion that an offer of proof could not have been made here since defendant could not have known of any pending lawsuits without Caliendo's assistance on the witness stand. On the contrary, the fact that a lawsuit has been filed is a matter of public record. We held in *Winfield* (113 Ill. App. 3d 818, 447 N.E.2d 1029) that the trial court did not abuse its discretion by requiring an offer of proof as to pending criminal charges before cross-examination would be allowed, where the existence of such charges could be independently verified without the witness' testimony. We see no difference here.

■ Defendant next contends that his fifth amendment right to remain silent was violated when the State, on rebuttal, elicited testimony from McClendon that the defendant never mentioned during the disciplinary hearing that correctional officers or gang members beat him or that he had been bleeding from the nose, ears, or lip. Defend-

ant, however, did not object to the questioning of McClendon at trial and did not raise this issue in his post-trial motion. Therefore, the issue is waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Stewart* (1984), 104 Ill. 2d 463, 473 N.E.2d 1227 (contention that defendant's fifth amendment right to remain silent was violated held waived because there was no objection during trial or in the post-trial motion).

Defendant urges us to invoke the plain error doctrine in considering this issue. That doctrine, however, is applied only in limited cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.) Despite the jury's finding of not guilty of aggravated battery to a corrections officer, we nevertheless do not consider the evidence here to be closely balanced. Nor do we believe that the prosecutor's inquiries on rebuttal affected the jury's verdict. As previously stated, the material aspects of the incident which Caliendo testified to were fully corroborated by Dembrosz. Further, McClendon's testimony that at the disciplinary hearing defendant summarized the incident by stating, "Not guilty. I was on the top deck talking when this officer came and grabbed me from behind and then struck me and I struck him back," was effective impeachment of defendant's testimony at trial that he was on the top deck standing near his cell when he was first confronted by a gang member who swung at and kicked him, then was beaten by more gang members in a full-scale brawl, then punched and kicked by several correctional officers. Consequently, we do not consider this a case in which, absent McClendon's testimony regarding defendant's silence, "honest, fair-minded jurors might very well have brought [a] not-guilty [verdict]." *Chapman v. California* (1967), 386 U.S. 18, 26, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 829.

Finally, defendant contends that remarks made by the State both in its opening statement and closing argument constituted reversible error because they improperly conveyed to the jury that defendant had committed other crimes and wrongly implied that he was a gang member. We consider each category of remarks in turn.

■ With respect to the State's remarks regarding defendant's alleged criminality, we note preliminarily that prior to trial, the judge granted a defense motion *in limine* prohibiting inquiry into the fact that defendant was charged with armed violence and possession of a controlled substance, and was incarcerated pending appeal of those charges when the incident took place. The trial judge also granted the State's motion *in limine* prohibiting defense counsel from introducing

evidence that defendant's motion to quash arrest and motion to suppress had been sustained regarding those charges.

In view of the foregoing background, defendant takes issue with the following comments made by the State in its closing rebuttal argument:

> "Neither you nor I nor Mr. Kloak [defense counsel] are [*sic*] responsible for the conditions over at Cook County Jail, *it is people like the Defendant who commit crimes and are incarcerated there pending their trials*—that make the jail overcrowded.
>
> * * *
>
> You should not feel guilty because the Cook County Jail is overcrowded, you should not feel guilty, nor should you feel sorry for the Defendant *because he put himself in Cook County Jail* * * *." (Emphasis added.)

Upon objection by defense counsel, the trial judge responded, "[T]he jury has [*sic*] heard the evidence, they will rely on the evidence in reaching their decision. Proceed."

We note that though defense counsel timely objected to the prosecutor's remarks, he failed to raise this issue in his post-trial motion. "The failure to raise an issue in a written motion for new trial generally constitutes waiver of that issue and it cannot be urged as a grounds for reversal on review." (*People v. Gacho* (1988), 122 Ill. 2d 221, 239, 522 N.E.2d 1146.) Furthermore, for reasons previously stated, we do not find this case to be one in which the plain error doctrine should be invoked. Therefore, this issue is waived.

Even absent waiver, however, it is well settled that prosecutors are generally allowed wide latitude in closing arguments. (*People v. Mikell* (1991), 217 Ill. App. 3d 814, 577 N.E.2d 1300; *People v. Phillips*, 186 Ill. App. 3d 668, 542 N.E.2d 814.) The complained-of remarks must be examined in the context of the prosecutor's argument as a whole, but all remarks made in the closing argument must be based upon the evidence presented or on reasonable inferences derived from such evidence. (*People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 N.E.2d 1250.) However, improper remarks made by the prosecutor will not constitute reversible error unless they were a material factor in the defendant's conviction thereby resulting in substantial prejudice. (*People v. Mikell*, 217 Ill. App. 3d 814, 577 N.E.2d 1300; *People v. Uzelac*, 179 Ill. App. 3d 395, 534 N.E.2d 1250; *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) Whether substantial prejudice resulted depends on whether the jury would have reached a

contrary verdict had the comments not been made. *People v. Mikell*, 217 Ill. App. 3d 814, 577 N.E.2d 1300.

Here, given the setting of Cook County jail as the place where the incident occurred, it is reasonable to assume that the jury must itself have considered why defendant was there in the first place. Further, no mention was made by the prosecutor as to the specific charges for which defendant was incarcerated, and therefore we find no violation of the motion *in limine* granted by the trial judge. In conjunction with what we believe to be strong evidence on the part of the State, we do not find that the prosecutor's comments amount to reversible error.

Similarly, with respect to the comment made by the State during its opening statement characterizing Cook County jail as "a place we put people who are charged with crime or people who have been convicted of crimes," we regard this statement as merely an accurate portrayal of Cook County jail which did not manifestly prejudice defendant.

■ Defendant finally contends that gang-related remarks made by the prosecutor in her closing rebuttal argument improperly implied to the jury that defendant was a gang member which effect was to substantially prejudice defendant. However, defense counsel did not object to these comments and failed to raise them in the post-trial motion. Therefore, this issue is waived. *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.