NOTICE

Decision filed 06/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230234-U

NO. 5-23-0234

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 17-CF-1732 |
| | ) | |
| KEIRSEAN M. BOND, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting the State's motion to dismiss defendant's postconviction petition is affirmed where defendant failed to show that postconviction counsel provided unreasonable assistance for not raising claims of ineffective assistance of his trial and appellate counsel.

¶ 2    In the underlying criminal case, in May 2018, a jury found the defendant, Keirsean M. Bond, guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)), attempt (first degree murder) (*id.*), and armed robbery (*id.* § 18-2(a)(3)) based on an accountability theory from a drug transaction that ended in a shooting. The trial court sentenced the defendant to 30 years on the first degree murder conviction to run consecutive to two 10-year concurrent terms on the attempt and armed robbery convictions. On October 7, 2020, the appellate court affirmed the defendant's conviction and sentence. *People v. Bond*, 2020 IL App (4th) 180584-U.

1

¶ 3    On December 16, 2021, the defendant's retained counsel filed a postconviction petition on the defendant's behalf alleging that trial counsel was ineffective for failing to request separate verdict forms instead of a general form for the first degree murder charge. The defendant alleged that counsel's failure raised a risk that the jury would find the defendant guilty of first degree murder on a theory of felony murder, which resulted in the defendant's improper conviction and sentence for the lesser-included offense of armed robbery in addition to murder. He also alleged that appellate counsel was ineffective for failing to raise this issue on direct appeal. The trial court advanced the case to the second stage on March 8, 2022. The State filed its motion to dismiss, and the trial court dismissed the case, concluding that there was a presumption that counsel's decision not to request separate verdict forms was strategic and there was nothing in the record to rebut that presumption. The defendant appealed. On appeal, the defendant now claims that postconviction counsel provided unreasonable assistance by failing to raise claims of ineffective assistance of trial and appellate counsel on a different issue—trial counsel's failure to cross-examine witness Scottie Bone with evidence that he allegedly met with, and was provided money by, a state's attorney a few days before the November 18, 2017, crimes with which the defendant was charged. For the reasons that follow, we affirm.

¶ 4                                    I. Background

¶ 5    The defendant met Scottie Bone (Bone) in 2015 at an impact incarceration boot camp program in the Illinois Department of Corrections. After the boot camp program, the men continued to communicate about selling marijuana. In November 2017, Bone agreed to sell the defendant five pounds of marijuana with delivery at an additional cost. Bone brought his friend, Todd Feldkamp (Feldkamp), with him to the planned delivery in Mt. Zion. After meeting at a parking lot, Bone and Feldkamp followed the defendant to a house. Upon exiting their vehicle,

2

Bone and Feldkamp followed the defendant and another man down a driveway towards the house. The unknown man pulled out a gun, shot Feldkamp twice and Bone once. Feldkamp died.

¶ 6       The following are relevant excerpts of the testimony during the May 2018 trial from the appellate court's order on direct appeal. *Bond*, 2020 IL App (4th) 180584-U. Bone testified about his criminal history, which included weapon and theft charges, and about his pending cases, which included drug and domestic battery charges. Bone testified he met the defendant in 2015 while they were both housed at Graham Correctional Center. They were then transferred to the DuQuoin Impact Incarceration Program where they were "bunkies." Bone considered the defendant a friend. For the approximate two months they were together in the Illinois Department of Corrections program, they discussed conducting drug transactions upon release. They exchanged telephone numbers.

¶ 7       Bone said he and the defendant communicated "off and on" by text or Snapchat after their release, trying to get "stuff situated" to "make a deal." Bone testified that on November 18, 2017, he messaged the defendant and told him he had five pounds of marijuana to sell him. The agreement was five pounds at $2,700 per pound. Bone lived in Effingham and the defendant lived in Decatur. Bone said he wanted to meet the defendant in Shelbyville, where they would both be out of their "comfort zone." Instead, they agreed to meet in Mt. Zion. The defendant told Bone he would pay $300 more per pound if Bone would deliver the marijuana to the defendant's house in Decatur. Bone agreed.

¶ 8       Bone asked his friend Feldkamp to accompany him. Bone drove Feldkamp's vehicle to Decatur. They planned to meet the defendant at a Family Video store in Decatur and then follow the defendant to his house. Once Bone and Feldkamp arrived at the Family Video store, Bone said he called the defendant. According to Bone, the defendant said he was five minutes away and

3

would be in a white car. The defendant then sent Bone a Snapchat message that said "Lac." To Bone, the message meant the defendant would be in a white Cadillac. Bone identified the white Cadillac pulling into the parking lot from a surveillance video. The car pulled into the parking lot and then Bone followed the car to a house at 1660 North Edward in Decatur.

¶ 9    Bone had put $700 in the center console of Feldkamp's vehicle "just in case something would go wrong that [they] would still have money." The marijuana was vacuum sealed in a duffel bag with $5,000 that Bone was going to use afterward to purchase more marijuana.

¶ 10    Bone said the defendant's Cadillac pulled into the driveway of the residence, backed out, and parked on the street directly in front of the house. Bone also parked on the street behind the Cadillac. The defendant exited the driver's side of the Cadillac and walked toward Bone and Feldkamp. The defendant greeted only Feldkamp, shook his hand, walked back to the Cadillac, and began talking to someone in the back passenger seat. Bone retrieved the duffel bag with the marijuana from the trunk. Bone said the defendant was wearing a black sweatshirt and black pants. The backseat passenger, who was also wearing all black with a hoodie pulled tight around his head, exited the Cadillac and all four individuals walked up the driveway toward the house. Bone and the defendant walked side-by-side with Feldkamp and the unknown male behind them.

¶ 11    The defendant walked to the backdoor of the residence and opened the screen door. Bone would have been first to enter the house, then Feldkamp, and then the unknown male, while the defendant held open the door. As they stood at the door, the unknown male pulled a gun, pointed it at Feldkamp, and told him not to move. He shot Feldkamp, who fell to the ground. He then shot Bone in the forearm. He turned back to Feldkamp and shot him again. Bone yelled, "just take it," referring to the duffel bag. After the defendant and the unknown male left the scene, Bone called the police.

4

¶ 12    At the conclusion of the trial, the jury found the defendant guilty of first degree murder, attempt (first degree murder), and armed robbery. The court sentenced the defendant to a 30-year term of imprisonment on his first degree murder conviction and two 10-year terms on his attempt and armed robbery convictions. The 10-year terms were ordered to run concurrently with each other but consecutively to his 30-year term.

¶ 13    On appeal, the appellate court affirmed. The court concluded that the evidence was legally sufficient to sustain the convictions on an accountability theory of guilt when viewed in the light most favorable to the prosecution; there was no error in the admission of records regarding the defendant's cell phone location; and the defendant was not denied the effective assistance of trial counsel regarding the admission of a Snapchat message as it had been sufficiently authenticated by the victim's testimony. *Bond*, 2020 IL App (4th) 180584-U, ¶¶ 3-5.

¶ 14                                        II. Analysis

¶ 15    The Post-Conviction Hearing Act (Act) provides a three-stage procedure by which a defendant may challenge his conviction based on allegations of a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, the postconviction court reviews the defendant's petition to determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 16    During the second stage, "counsel may be appointed to an indigent defendant and the State may file a motion to dismiss or an answer to the petition." *People v. Domagala*, 2013 IL 113688, ¶ 33; 725 ILCS 5/122-4, 122-5 (West 2020). "The second stage of postconviction review tests the legal sufficiency of the petition." *Domagala*, 2013 IL 113688, ¶ 35. At the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Id.* "If

the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. To succeed at this stage, the petition and supporting documentation must make a " 'substantial showing of a constitutional violation.' " *Domagala*, 2013 IL 113688, ¶ 33 (quoting *Edwards*, 197 Ill. 2d at 246). This court reviews the trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Addison*, 2023 IL 127119, ¶ 17.

¶ 17 The Act requires that "the petition [is] verified by affidavit" and that there are "affidavits, records, or other evidence supporting [the] allegations" attached to the petition "or shall state why the same are not attached." 725 ILCS 5/122-1(b), 122-2 (West 2020). Allegations made by the defendant are taken as true unless the allegations are refuted by the record. *Domagala*, 2013 IL 113688, ¶ 35. If the record rebuts the allegations or if the petition does not contain sufficient facts to make a substantial showing of a constitutional violation it should be dismissed. *People v. Williams*, 209 Ill. 2d 227, 233 (2004). We may affirm the dismissal of a postconviction petition on any basis supported by the record. *People v. Wright*, 2013 IL App (4th) 110822, ¶ 23.

¶ 18 Here, the defendant alleges that he did not receive reasonable assistance by postconviction counsel because he failed to raise claims of ineffective assistance of trial and appellate counsel. At issue was trial counsel's failure to cross-examine a State witness, Scottie Bone, about Bone's alleged meeting with, and payment by, a state's attorney only a few days before the shootings in this case for which the defendant was charged. Additionally, the defendant claims that appellate counsel failed to raise ineffective assistance of trial counsel on this basis on direct appeal.

¶ 19 There is no constitutional right to counsel in postconviction proceedings (*People v. Johnson*, 2018 IL 122227, ¶ 16 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)), and

6

therefore a defendant is only guaranteed the level of assistance provided for by the Act (*People v. Moore*, 189 Ill. 2d 521, 541 (2000)). While the Act does not provide for a precise level of assistance, the Illinois Supreme Court has held that defendants are entitled to a "reasonable" level of legal assistance at the second and third stages of postconviction proceedings. *Johnson*, 2018 IL 122227, ¶ 16 (citing *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990)). "Notably, this right is not limited to appointed counsel," as "[p]rivately retained attorneys must also provide a reasonable level of assistance." *Id.* (citing *People v. Cotto*, 2016 IL 119006, ¶¶ 39-41).

¶ 20 The Illinois Supreme Court explained that a defendant's right to reasonable assistance stems from the nature and purpose of the Act, as "the purpose of the Act is to provide a statutory mechanism for incarcerated defendants to assert they have been unconstitutionally deprived of their liberty." *Id.* ¶ 17. The court stated that the only way to ensure that the Act's purpose was maintained—"that criminal defendants are not deprived of liberty in violation of their constitutional rights[—]is to provide some means of reviewing attorney performance." *Id.*

¶ 21 The Illinois Supreme Court also stated that the requirement of a reasonable level of assistance from privately retained counsel applies with equal force to all three stages of postconviction proceedings. *Id.* ¶ 18. Although there is no right to have counsel appointed at the first stage, and thus the court is not required to appoint counsel at the first stage, "it does not follow from this premise that an attorney who is privately retained [to represent a defendant at the first stage] is therefore free to provide unreasonable assistance. *Id.* ¶¶ 18-19.

¶ 22 The court noted that deficient attorney performance at the first stage was more likely to involve the failure of retained counsel to include certain claims that the defendant wanted to be raised. *Id.* ¶ 21. *Pro se* defendants can include all possible claims in their petition. *Id.* Thus, by recognizing a standard of attorney performance at the first stage, *pro se* and represented defendants

7

are on "equal footing in making sure the claims they want to have raised in the postconviction petition are, in fact, included." *Id.* The supreme court concluded that "a defendant who retains a private attorney at the first stage of postconviction proceedings is entitled to a reasonable level of assistance of counsel." *Id.* ¶ 23.

¶ 23 We also note that Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which mandates that the defendant's attorney file a certificate with the court "to ensure that counsel shapes the [defendant's] claims into proper legal form and presents those claims to the court" (*People v. Perkins*, 229 Ill. 2d 34, 44 (2007)), does not apply when the defendant retains counsel to file the initial petition (*People v. Richmond*, 188 Ill. 2d 376, 381-83 (1999)). However, as stated previously, retained counsel is required to provide the defendant with reasonable assistance. *Cotto*, 2016 IL 119006, ¶¶ 41-42. "[T]he reasonable level of assistance provided for by the Act is 'less than that afforded by the federal or state constitutions.' " *Id.* ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 24 On appeal, the defendant does not challenge the trial court's judgment dismissing his petition for postconviction relief on the issue of separate verdict forms. Instead, the defendant argues that this court should remand the case for further second-stage proceedings because he did not receive reasonable assistance from postconviction counsel as required by the Act. Specifically, the defendant claims that retained counsel's representation was unreasonable because he did not allege that appellate counsel was ineffective for not arguing that trial counsel was ineffective for failing to impeach Bone. The defendant claims that the desired impeachment of Bone would have revealed that Bone believed testifying against the defendant could have resulted in his receipt of financial compensation.

¶ 25    An allegation of ineffective assistance of counsel requires an evaluation under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted in Illinois by *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). The defendant must establish both prongs of the standard to prevail on an ineffective-assistance claim. First, the defendant must show that his "counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial.' " *Albanese*, 104 Ill. 2d at 525 (quoting *Strickland*, 466 U.S. at 687). Second, the defendant must show " 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). If the defendant is unable to establish either prong of the *Strickland* test, the allegation of ineffective assistance of counsel will fail, and the court does not need to consider the other prong. See *Strickland*, 466 U.S. at 670.

¶ 26    "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Thus, a defendant claiming ineffective assistance of appellate counsel must show that the failure to raise this issue on direct appeal was objectively unreasonable and that the defendant was prejudiced by this failure. *Id.* Unless the underlying issue is meritorious, a defendant is not prejudiced by appellate counsel's failure to raise it. *Id.*

¶ 27    At issue is whether certain evidence existed with which Bone could have been impeached—that Bone would receive financial compensation from a state's attorney for testifying against the defendant. The State agrees that if such evidence existed, the defendant's argument would have merit, as the failure to use available impeachment evidence against a major State witness can constitute the denial of the effective assistance of trial counsel. See, *e.g.*, *People v.*

9

*Zambrano*, 2016 IL App (3d) 140178, ¶ 24; *People v. Vera*, 277 Ill. App. 3d 130, 140 (1995). Moreover, a defendant may "develop matters that would reasonably show the bias, motive or willingness of the State's witnesses to testify," which could include a financial benefit. *People v. Merz*, 122 Ill. App. 3d 972, 976 (1984); *People v. Hughes*, 51 Ill. App. 3d 985, 987 (1977).

¶ 28    "Evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect." *People v. Gonzalez*, 142 Ill. 2d 481, 487 (1991). Impeachment is disallowed if the testimony relates to collateral matters and is not material to an issue of the case. *People v. Nunn*, 301 Ill. App. 3d 816, 822 (1998).

¶ 29    A defense attorney is given substantial license in cross-examination of a State witness regarding his testimonial motivations. *People v. Smado*, 322 Ill. App. 3d 329, 338 (2001). However, defense counsel is precluded from speculative attempts to procure the foundational bias for the witness's testimony. *People v. Triplett*, 108 Ill. 2d 463, 474-76 (1985). The attorney's inquiry may not be based in uncertainty and must at least provide an inference that the State's witness has a motivation behind his testimony. *Id.* However, "impeachment by innuendo is intolerable." *People v. Robinson*, 189 Ill. App. 3d 323, 339 (1989). The process to follow is:

> "When a line of questioning is objected to or denied by the trial court, the defendant must set forth an offer of proof either to convince the trial court to allow the testimony or to establish on the record that the evidence was directly and positively related to the issue of bias or motive to testify falsely. [Citation.] A formal offer of proof is typically required; however, an informal offer of proof, involving counsel's summary of what the proposed evidence might prove, may be sufficient if specific and not based on speculation or conjecture. [Citation.]" *People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007) (citing *People v. Phillips*, 186 Ill. App. 3d 668, 679 (1989)).

¶ 30    "A judge may limit the scope of cross-examination and unless the defendant can show his or her inquiry is not based on a remote or uncertain theory, a court's ruling limiting the scope of examination will be affirmed." *Id.* Additionally, a trial court maintains the discretion to determine if a cross-examination topic is collateral in nature. *People v. Collins*, 106 Ill. 2d 237, 269-70 (1985).

¶ 31    The defendant argues that the State's case hinged upon the credibility of Bone as its main witness, and that his trial attorney should have cross-examined Bone in a way to further demonstrate to the jury how unreliable he was. Specifically, the defendant alleges that his trial attorney should have used evidence showing that:

> "(1) Bone was given money by a State's Attorney a few days prior to the incident; (2) he was happy to have been given the money and asked 'where do I sign,' prior to the money being released to him; and (3) at the time of the incident, Bone believed that the State's Attorney still owed him a substantial amount of money."

¶ 32    The text messages at issue were communications between Bone and "Alexis," "Nicole," and an unidentified third person. In these messages, Bone references a meeting that he had with a female state's attorney at a Chicago courthouse on November 13, 2017. Bone stated that the meeting was to get back the money that was taken from him. Later the same day, Bone texted "Nicole" to advise that he got half of his money back, and that when the female state's attorney offered him half, he "was like[,] deal where do I sign." In the messages to Alexis and Nicole, Bone specifically stated that he was meeting with a state's attorney at a Chicago courthouse, and that he had spent the night before the meeting at a Chicago hotel.

¶ 33    The defendant submits that Bone could have testified that he believed he would be rewarded by the Chicago state's attorney with the other half of "his money" by implicating the

11

defendant in the events of November 18, 2017. The defendant provides no factual support or connection between the alleged money Bone received in Chicago and his testimony as a victim in this case. The State argues that any proffered testimony about a recent "deal" with a Chicago-based state's attorney could not have been premised upon Bone's reasonable belief that he had a financial interest that was dependent upon the defendant being found guilty in this Macon County case. This alleged meeting with a Chicago state's attorney occurred a few days before the defendant's accomplice shot and killed Feldkamp and shot and robbed Bone. We do not find, and the defendant does not argue, a direct connection to this case.

¶ 34 Bone was an admitted convicted felon and drug dealer. The defendant does not proffer an explanation for why the state's attorney in Chicago had Bone's drug money, or why the state's attorney was giving some of the money back to Bone. The defendant provides no rational connection between this alleged drug money proffer to Bone and Bone's testimony in this case. The defendant also does not provide any connection between Bone's testimony and any agreement with the State in this case. We conclude that this argument was speculative and therefore inappropriate. *Triplett*, 108 Ill. 2d at 474-76.

¶ 35 While this testimony would have established that Bone had a criminal history, the fact that Bone had a criminal history was already part of his testimony in this case. Bone also acknowledged that there were pending criminal cases against him, including one involving illegal drugs. To have sought admission of these text messages under some hearsay exception, the defendant would have had to provide a supportive offer of proof "to establish on the record that the evidence was directly and positively related to the issue of bias or motive to testify falsely." *Tabb*, 374 Ill. App. 3d at 689 (citing *Phillips*, 186 Ill. App. 3d at 678). The defendant provides no foundational support for this theory.

12

¶ 36    We conclude that the evidence at issue would have been inadmissible in the defendant's trial. The defendant provides no applicable hearsay exception, or a non-hearsay purpose for the admission of this evidence. *People v. Turner*, 2012 IL App (2d) 100819, ¶¶ 53, 61 (holding that trial counsel did not provide ineffective assistance for not attempting to offer inadmissible hearsay). Further, a claim of prejudice based on speculation and conjecture cannot support an ineffective assistance of counsel claim. *People v. Gosier*, 165 Ill. 2d 16, 24 (1995).

¶ 37    We do not find that trial counsel was ineffective for failing to cross-examine Bone about these text messages and thus, counsel's representation did not fall fell below an objective standard of reasonableness and counsel's "failures" did not " 'deprive the defendant of a fair trial.' " *Albanese*, 104 Ill. 2d at 525 (quoting *Strickland*, 466 U.S. at 687). We also do not find that appellate counsel was ineffective for not alleging that trial counsel was ineffective. *Childress*, 191 Ill. 2d at 175. Finally, we do not find that postconviction counsel provided unreasonable assistance by not raising this issue. *Johnson*, 2018 IL 122227, ¶ 16 (citing *Cotto*, 2016 IL 119006, ¶¶ 39-41).

¶ 38                                III. Conclusion

¶ 39    For the foregoing reasons, we affirm the judgment of the Macon County circuit court dismissing the defendant's postconviction petition at the second stage.


¶ 40    Affirmed.